UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAZIF OSKAN,<br><br>Petitioner(s),<br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondent(s). | CASE NO. C26-3101-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner filed a petition for a writ of habeas corpus, asserting that his detention by Immigration and Customs Enforcement ("ICE") without a hearing violated his due process rights. Dkt. No. 12. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 12, 14, 17. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner is a native of Turkey. Dkt. No. 12 ¶ 1. He fled to the United States in 2023 after the Turkish government initiated criminal proceedings against him for posting videos on social media about atheism. *Id.* ¶¶ 1–2, 19–20. Petitioner was encountered by a border patrol agent in San Diego, California, on October 4, 2023. Dkt. No. 16 ¶ 4. He was arrested and transported to the San Diego Area Detention for further processing. *Id.*

On October 6, 2023, Petitioner was served with a Notice to Appear ("NTA"), charging removability under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) and placing him

in removal proceedings. Dkt. No. 16 ¶ 6; Dkt. No. 15-2. That same day, Petitioner was released on an order of recognizance ("OREC"). Dkt. No. 16 ¶ 7–8; Dkt. No. 15-3 (copy of OREC). The conditions of the OREC required that Petitioner seek approval before changing his residence and assist the Government in obtaining necessary travel documents. Dkt. No. 15-3. The OREC further instructed that Petitioner was not to violate any local, State, or Federal laws or ordinances. *Id.* Petitioner timely applied for asylum and was provided a social security number and work authorization. Dkt. No. 12 ¶¶ 26, 79; Dkt. No. 17 at 1–2.

On July 24, 2026, Petitioner was arrested for criminal mischief in Alaska on suspicion of property damage after an argument during which he damaged his own television. Dkt. No. 12 ¶ 4. The next day, the Municipality of Anchorage declined to file charges against Petitioner and requested that the court vacate bail conditions and any future hearings. Dkt. No. 13-4. That same day, Alaska Department of Corrections informed ICE Alaska that Petitioner had been arrested on suspicion of criminal mischief. Dkt. No. 16 ¶ 9. ICE "placed a detainer, took [P]etitioner in custody and transported him to Anchorage Jail." Dkt. No. 16 ¶ 10.[1] Petitioner was held in jail in Anchorage until he was transferred to the Northwest Immigration Processing Center on July 29, 2026, where he remains detained. *Id.* ¶¶ 10–11.

On September 11, 2026, Petitioner appeared for an individual hearing at the Tacoma Immigration Court where he was granted pre-conclusion voluntary departure under INA § 240B(a), subject to applicable safeguards and ordered to depart before October 13, 2026. Dkt. No. 16 ¶ 12; Dkt. 13-7. Petitioner appealed this grant of voluntary departure on October 13, 2026, and his appeal remains pending at the Board of Immigration Appeals ("BIA"). Dkt. No. 16 ¶ 15.

[1] The parties dispute when exactly ICE took custody of Petitioner. The Government argues it was on July 25, while Petitioner contends it was not until July 28. Dkt. No. 16 ¶ 10; Dkt. No. 12 ¶ 32.

Petitioner filed the habeas petition on September 28, 2026. Dkt. No. 4. After the Court appointed counsel, Petitioner filed an amended petition on October 19, 2026. Dkt. Nos. 8, 12. The Government filed its return on November 2, and the Petitioner filed his traverse on November 9, 2026. Dkt. Nos. 14, 17. This matter is now ripe for review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. ANALYSIS

### A. Petitioner Was Subject to 8 U.S.C. § 1226(a) When He Was Re-Detained.

The Government contends that Petitioner falls within the mandatory detention scheme under Section 1225(b) as an applicant for admission who was initially encountered at the United States border. Dkt. No. 14 at 1–2. Petitioner disagrees and argues that his "status as a person previously released on OREC" who "has been living in this country for years" means his detention is governed by §1226. Dkt. No. 17 at 3–4. The Court agrees with Petitioner.

As this Court and the Ninth Circuit have ruled in countless nearly identical situations, Petitioner's status as a person previously released on recognizance, and who has been living in this country for years, is inconsistent with the Government's expanded view of the INA. *See, e.g.*, *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1190, 1193 (9th Cir. 2026) (rejecting theory subjecting noncitizens present in the United States to mandatory detention regardless of the amount of time they have lived in the country, and holding that § 1226, not § 1225(b)(2), applies to "unadmitted [noncitizens] present in the interior of the country"); *Lopez-Campos v. Raycraft*, 175

F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).

Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a). Such a holding is not only consistent with the caselaw discussed above, but consistent with the Government's own treatment of Petitioner. First, Petitioner's OREC was issued under Section 1226(a). Dkt. No. 15-3. When

the Government served Petitioner with an NTA on October 6, 2023, that document also stated that Petitioner was a person "present in the United States who has not been admitted or paroled" as opposed to an "arriving" noncitizen under Section 1225. Dkt. No. 15-2 at 2. Similarly, the Government's arrest warrant prepared contemporaneously with Petitioner's detention relies on Section 1226. Dkt. No. 15-4 at 2 (citing INA § 236, codified at 8 U.S.C. § 1226). In short, nothing in the record suggests the Government ever treated Petitioner as subject to Section 1225.

**B. Petitioner's Detention Violates Due Process**

Petitioner contends that his arrest and re-detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) (quoting *Zadvydas*, 533 U.S. at 690).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Determining whether an administrative procedure provides the process constitutionally due generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally,

> the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

1. Petitioner has a protected interest in his liberty

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner, who was released from immigration custody and lived on an order of recognizance for almost three years, was arrested and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty. The Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Garcia Radillo v. Scott*, No. 2:26-CV-02357-JHC, 2026 WL 2168044, at *2 (W.D. Wash. July 28, 2026) ("Even conditional release is valuable and must be seen as within the protection of the Due Process Clause." (citation modified)). The Government does not meaningfully argue otherwise. Accordingly, the first *Mathews* factor favors Petitioner.

2. The risk of erroneous deprivation is high

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. Petitioner was given no opportunity to contest the reasons for his re-detention, and the Government does not dispute that "courts in this District have found that petitioners detained due to release violations like Petitioner were entitled to pre-

deprivation hearings." Dkt. No. 14 at 4 (citing cases). Given the lack of process Petitioner received, the Court finds the risk of erroneous deprivation is high, and the second *Mathews* factor favors Petitioner.

3. The Government's interest in detaining Petitioner without process is low

In applying the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without process. The Court finds that the Government's interest in re-detaining without process non-citizens previously released is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The third *Mathews* factor thus favors Petitioner.

Accordingly, the Court finds that Petitioner's due process rights have been violated and turns to consider the appropriate remedy.

## IV. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. That Petitioner was arrested for a criminal offense does not alter that conclusion or preclude release, as the Government contends, particularly where no formal charges were ever brought against Petitioner. Dkt. No. 14 at 4–5; Dkt. No. 13-4. "[C]ourts typically draw a distinction where there has only been an arrest or pending charges, and … have repeatedly found that the government violated due process regardless of a non-citizen's pending criminal charges when they are re-detained without notice or an opportunity to be heard." *Garcia Radillo*, 2026 WL 2168044, at *3 (collecting cases). Thus, numerous courts in this District have ordered release notwithstanding arrests or criminal charges. *See, e.g.*, *id.*; *Fiston v. Bondi*, No. 2:26-CV-00904-JHC, 2026 WL 926064, at *4 (W.D. Wash. Apr. 6, 2026). Though the Government urges the Court to instead order a post-deprivation hearing, such a hearing "is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Mendez-Prades v. Scott*, No. C26-2571-KKE, 2026 WL 2921987, at *5 (W.D. Wash. Sept. 29, 2026) (citation omitted). That is because, among other things, "such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty," *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025), and "allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless," *Mendoza v. Adelanto ICE Processing Ctr. Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026).

Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *9 (N.D. Cal. Dec. 18, 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral

decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

**V. CONCLUSION**

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 12. The Court ORDERS as follows:

1) Petitioner shall be released from custody on the terms of his prior OREC no later than November 17, 2026.

2) Petitioner shall not be re-detained, absent urgent circumstances, without notice and a hearing before a neutral decisionmaker. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

3) The Government shall file a declaration no later than November 19, 2026, documenting Petitioner's release in compliance with this order.

Dated this 16th day of November, 2026.

Kymberly K. Evanson
United States District Judge